ROSA CARRERA FREYRE ET AL., Plaintiffs and Appellees, *v.* JOSEFA DOLORES BRUNET GUAYTA, Defendant and Appellant.
ROSA CARRERA FREYRE ET AL., Plaintiffs and Appellees, *v.* ABRAHAM E. COPELAND, Defendant and Appellant.

Nos. 6290 and 6291. Argued November 21, 1933.—Decided September 29, 1934.

*Gabriel de la Haba* and *R. Castro Fernández* for the respective appellants. *A. Marín Marién* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

This is a revendicatory action. The district court rendered judgment for plaintiffs after a trial on the merits. Plaintiffs-appellees are the heirs of Juan Carreras y Carreras. Defendants are the successors in interest of the heirs of Brígido Candelario Concepción. The two chains of title lead to a common source. That source is the natural starting point for an outline of the outstanding facts.

In 1880 Juana Concepción Delgado, a married woman, the wife of Plácido Isaac Candelario y Cortijo, purchased a narrow strip of land in Santurce containing 8 *cuerdas* and 33 *varas* and recorded her title in 1894. The parcel was bounded on the South by Juan Miranda and Antonio Moreno; on the North by Olegario Núñez and Gertrudis Reyes; on the East by María Hipólita Kercadó and Clara Llanos, and on the West by Pedro Vidal and Juan Villarán. Its length was approximately eight times its width. After the death of Plácido Isaac Candelario an undivided one-half interest in the property was recorded in the name of the widow, Juana Concepción Delgado, and the other one-half in the name of the children, Brígido, Juana Carolina, José Pilar, and Lorenzo Candelario Concepción. In 1901 the property was divided among the co-owners. The south half was allotted to the widow and described as containing 4 *cuerdas* 17 *varas,* bounded on the South by Isabel French; on the North by Brígido Candelario y Concepción; on the East by Juan Asencio, and on the West by Pedro Vidal. Brígido Candelario received 1 *cuerda* 4 *varas* bounded on the North by Juana Carolina Candelario Concepción; on the South by Juana

Concepción Delgado; on the East by Mariano Pesquera Goenaga, and on the West by Cirila Rosario. Juana Carolina Candelario Concepción received 1 *cuerda* 4 *varas* bounded on the North by José Pilar Candelario Concepción; on the South by Brígido Candelario Concepción; on the East by Bruno Viñas, and on the West by Cirila Rosario. José Pilar Candelario Concepción received 1 *cuerda* 4 *varas* bounded on the North by Lorenzo Candelario Concepción; on the East by Isabel Sostre, and on the West by Paulino Cruz. Lorenzo Candelario Concepción received 1 *cuerda* 4 *varas* bounded on the North by Javiera Andino; on the South by José Pilar Candelario Concepción; on the East by Isabel Sostre, and on the West by Juan Villarán.

In 1912 Juan Carreras y Carreras stated in a notarial instrument that 14 lots previously recorded in his name were contiguous parcels, grouped them as one property and recorded the same as 8,050 meters and 43 square centimeters, bounded on the North by Joaquín Villamil and the estate of José Pons; on the South by Jaime Fort, Martín Candelario, María Isaac Candelario, Modesta Mandry and Martina Benítez; on the East by lands belonging to the Municipality of San Juan, Carlos Remus, Frank Antonsanti and Enrique Iglesias, and on the West by José Conrado Hernández. As to seven of these lots he derived title from Juana Concepción Delgado. As to five his title purports to have emanated originally from Lorenzo Candelario. Two, (one a one-half *cuerda* or 1965 meters and 20 centimeters and another a one-fourth *cuerda* or 982 meters and 60 square centimeters) he purchased from the owner or owners of a larger parcel or parcels of land lying entirely outside of the original 8 *cuerda* strip, to the east of and adjoining the 4 *cuerdas* belonging to Juana Concepción Delgado. The land now in controversy could not have been included in either of these two parcels, which together (it may be noted in passing) constitute more than half of the 8,050 meters recorded in the name of Juan Carreras.

Six of the seven lots acquired either directly or indirectly from Juana Concepción Delgado were located on the ground by a competent surveyor within the 4 *cuerdas* from which they had been segregated. From all the evidence, including the testimony of this surveyor and the description of the several lots in the registry of property, it seems reasonably clear that the land in controversy is not to be found in any one of the seven. Indeed there is nothing to show that it was included in the 4 *cuerdas* allotted to Juana Concepción Delgado. The evidence as a whole points to a contrary conclusion.

The five are referred to in one of the registrar's certificates as letters *g, h, l, ll,* and *m.* Lot *g* is described as 10 *varas* in front by 37½ in depth, and bounded on the North by Enrique Delgado; on the South by Lorenzo Candelario; on the East by Gabriela Allende, and on the West by the minors, Juan and Miguel Allende Llanos. It is said to have been segregated by Lorenzo Candelario from the 1 *cuerda* 4 *varas* above mentioned and sold by him to Juana Allende Llanos in December 1903, who conveyed to Gabriela Allende Llanos in March, 1904, who in turn conveyed to Juan Carreras y Carreras in July, 1905. Lot *h* is also 10 *varas* in front by 37½ in depth, and was bounded on the North by Enrique Delgado; on the South by Lorenzo Candelario; on the East by Dámaso Allende and on the West by Juana Emilia Allende. It is said to have been sold by Lorenzo Candelario to Gabriela Allende Llanos in December, 1903, by Gabriela Allende to Josefa Tinajero in April, 1904, and by deed of partition alloted in January 1905 to María Asunción Eusebia Viader y Tinajero, who sold to Juan Carreras y Carreras in July, 1905. Lot *l* is 10 *varas* wide by 37½ in depth, bounded on the North by Enrique Delgado; on the South by Lorenzo Candelario; on the East by Juana Allende, and on the West by Higinio Allende. It is said to have been segregated by Lorenzo Candelario as the owner of the 1 *cuerda* 4 *varas,*

*supra,* and sold in December, 1903, to Miguel and Juan Allende Llanos, who sold to Juan Carreras y Carreras in January, 1908. Lot *ll* is described as 12 *varas* in width by 37½ in depth, bounded on the East by Mariano Pesquera; on the West by Dámaso Allende; on the North by Enrique Delgado, and on the South by Lorenzo Candelario. It is said to have been segregated by Lorenzo Candelario in December, 1903, and sold to Isabel Caraballo y Romero, who sold in March, 1904, to Dámaso Allende, who in September, 1904, sold to Antonio Sevillano, who in April, 1906, sold to Juan Carreras y Carreras. Lot *m* is described as 10 *varas* in width by 37½ in depth, bounded on the North by Enrique Delgado; on the South by Lorenzo Candelario; on the East by Isabel Caraballo, and on the West by Gabriela Allende, and is said to have been segregated by Lorenzo Candelario in December, 1903, and sold to Dámaso Allende Llanos, who in March, 1904, sold to Isabel Caraballo Romero, who in January, 1906, sold to Juan Carreras y Carreras. It is significant that these five lots of equal depth, with a common boundary on the North, were all bounded on the South by Lorenzo Candelario and were by him segregated from the 1 *cuerda* 4 *varas* alloted to him out of the original 8 *cuerda* strip at a northern extremity thereof. Hence, none of them could have been contiguous to any of the lots purchased by Carreras from Juana Concepción out of the 4 *cuerdas* alloted to her at the other extreme of the 8 *cuerda* strip, itself only 1 *cuerda* in width. Nor could they have been contiguous to the one-half *cuerda* or to the one-fourth *cuerda* lying to the east of an adjoining the 4 *cuerdas* alloted to Juana Concepción. In any event, the land in controversy was separated from these five lots by the 1 *cuerda* four *varas* allotted to Juana Carolina and by the 1 *cuerda* 4 *varas* allotted to José Pilar, as well as by the unsold portion of the 1 *cuerda* 4 *varas* allotted to Lorenzo. This will become more apparent as we proceed to locate the land in controversy with reference to other portions of the 8 *cuerda* track already referred to.

As we have seen, the 1 *cuerda* 4 *varas* allotted to Brígido Candelario was bounded on the South by the 4 *cuerdas* allotted to Juana Concepción, on the North by the 1 *cuerda* 4 *varas* allotted to Juana Carolina Candelario, on the West by Cirila Rosario and on the East by Mariano Pesquera Goenaga. The land belonging to Pesquera became the site of a Municipal Hospital. Later a thoroughfare known as De Diego Avenue was laid out to the west of, partly upon and traversing longitudinally more than half of the 8 *cuerda* strip near its western boundary. The Municipality enlarged its hospital site by extending the same over and across the 8 *cuerda* strip to De Diego Avenue.

In 1925, after a judicial declaration of heirship, the Brígido Candelario parcel was recorded in the name of María and Severo Candelario y Becerril. In January, 1926, these new record owners segregated and sold to José E. Pérez a lot containing 660 square meters 6 square centimeters, bounded on the East for a distance of 12 meters by land of the Municipal Hospital, formerly belonging to Mariano Pesquera Goenaga; on the North for a distance of 29 meters 50 centimeters by another portion of the Brígido Candelario parcel, now a part of the Municipal Hospital property; on the South for a distance of 25 meters 8 centimeters by Josefina Rivera and a prolongation of Antonsanti Avenue; and on the West for a distance of 28 meters 90 centimeters by another portion of the original parcel now De Diego Avenue. In March of the same year Pérez segregated and sold to J. Hernández & Hno. a lot containing 275 square meters, fronting to the west on De Diego Avenue, bounded on the South and East by José E. Pérez, and on the North by the Municipal Hospital. The remainder of the Pérez lot was then described as containing 385 square meters 6 square centimeters with a frontage of 17 meters 90 centimeters, bounded on the South for a distance of 28 meters 8 centimeters by Antonsanti Avenue and a lot belonging to Josefina Rivera; in the rear on the East for a distance of 12 meters by lands belonging to

the Municipal Hospital, and on the North *"con ángulo de 25 metros ·en el lado de intersección en el frente del solar y 11 metros en dirección de sur a norte* by a lot belonging to J. Hernández Hermanos, and in a straight line for a distance of 4.5 meters in a west to east direction by the lot where the Municipal Hospital stands."

The lot in possession of the defendant Josefa Dolores Brunet y Guayta is described in the complaint as bounded on the West by De Diego Avenue; on the South and East by José E. Pérez, and on the North by the Municipal Hospital, measuring 11 meters in width by 25 in depth and containing 275 square meters. The other in possession of defendant Copeland is described in the complaint as containing 339 square meters 89 square centimeters, bounded on the North for a distance of 25 meters by Hernández & Hermanos and for a distance of 4 meters 15 centimeters by the Municipal Hospital; on the East for a distance of 12 meters by the Municipal Hospital; on the South for a distance of 25 meters 8 centimeters by Josefina Rivera; on the Southwest (sic) for a distance of 12 meters 40 centimeters by a prolongation of Antonsanti Street; and on the West, its front, by De Diego Avenue.

The registrar speaks of previous segregations from the parcel alloted to Brígido Candelario, but we have no description of the lots previously segregated. The burden was, of course, upon plaintiffs to establish by a preponderance of evidence their claim to ownership of the lots in controversy. This they have signally failed to do. In the face of the foregoing facts, the mere circumstance that the lot in question may be said to fall within the perimeter of the 8,050 meters described by Carreras as the aggregate of 14 smaller parcels grouped by him in an exparte notarial instrument does not meet the requirements of the rule that plaintiffs in a revendicatory action must recover, if at all, upon the strength of their own title and can not rely upon any weakness in the title of defendants.

 Defendants herein were not made parties to a similar action brought by the same plaintiffs against *Pérez, et als.,* 42 P.R.R. 347. Hence, they are not bound in any way by the result in that case. A perusal of the opinion in the Pérez case will suffice to distinguish the same from the case at bar.

The judgment appealed from must be reversed.